# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JACOB LYNTELLUS BROOKS,    *

     Petitioner,    *

    v.    *        Civil Action No. RDB-17-0358

WARDEN,    *

     Respondent.    *

        ***

## MEMORANDUM OPINION

Jacob Lyntellus Brooks, currently confined at North Branch Correctional Institution in Cumberland, Maryland, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner, who is self-represented, challenges the validity of his 2009 conviction in the Circuit Court for Prince George's County, Maryland for carjacking, second-degree assault, auto theft, and transporting a handgun on a roadway. *Id.* at 1. Respondents filed an Answer, in which they seek dismissal of the Petition on the merits and on the basis of procedural default. ECF No. 6. The Court finds no need for an evidentiary hearing. See Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Md. Local Rule 105.6; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the reasons that follow, the Petition is denied and dismissed, and a Certificate of Appealability shall not issue.

## BACKGROUND

On December 9, 2008, Brooks was indicted in the Circuit Court for Prince George's County for carjacking and related offenses arising from events that took place on November 7, 2008. ECF No. 6-1 at 1, 4–7. After a three-day trial, on August 28, 2009, a jury convicted Brooks of carjacking, second-degree assault, auto theft, and transporting a handgun on a roadway. ECF

No. 6-4 at 20–23.  On October 23, 2009, Brooks was sentenced to a total of 30 years imprisonment.  ECF No. 6-1 at 12.

At trial, the State introduced evidence to establish the following.  On the evening of November 7, 2008, Brooks and Clarence Butler arrived at an elementary school dressed in black and wearing masks.  ECF No. 6-2 at 131.  Butler testified that both men were armed with guns.  *Id.* at 132.  As a woman placed something in the trunk of her vehicle in the school's parking lot, the two men approached her and demanded her car keys.  *Id.* at 134.  Brooks displayed his weapon, and the woman complied with their commands.  *Id.*  A family in a minivan witnessed the carjacking and pulled up behind the stolen vehicle in an attempt to prevent Brooks and Butler from leaving the parking lot.  *Id.* at 30, 135.  Butler stepped out of the vehicle and pointed his gun at the driver of the minivan.  *Id.* at 74, 135.  Brooks was then able to drive the stolen car over a curb and exit the parking lot.  *Id.* at 136.  After Brooks drove off, the victim called the police.  Several police officers were able to pursue the stolen vehicle and eventually arrested Brooks and Butler after they had exited the vehicle and attempted to flee on foot.  *Id.* at 97, 117.

Several days before the carjacking, a homicide had occurred several blocks from the elementary school.  ECF No. 6-8 at 13.  During the arrest of Butler and Brooks immediately following the carjacking, the police seized a weapon, which they determined was linked to the homicide.  *Id.*  While Butler was in custody for the carjacking, he told the police that Brooks had confessed to the murder.  *Id.* at 15–16.  Brooks was then charged for both the homicide and the carjacking.  *Id.* at 16.  Butler, in contrast, entered into a cooperation agreement with the State and agreed to testify against Brooks at both trials.  *Id.* at 17.  As part of that deal, Butler pleaded guilty to carjacking and two counts of first-degree assault, while a number of other charges were dismissed.  *Id*. at 40–41.  Moreover, the State agreed he would receive a sentence within the range

of two to 21 years total, rather than the 30 years he could have faced on one count of carjacking. *Id.* at 41. When Butler testified at Brooks' carjacking trial, he stated that he pleaded guilty to carjacking and to two counts of first-degree assault. ECF No. 6-2 at 139. On cross-examination, however, Brooks' trial counsel did not ask a single follow-up question about Butler's plea deal. *Id.* at 140–49. Accordingly, no testimony was elicited as to the favorable terms of his deal.

After sentencing, Brooks challenged his conviction on direct appeal. ECF No. 6-5 at 2. On June 7, 2011, the Court of Special Appeals, finding no reversible error, affirmed Brooks' conviction. *Id.* at 1–2.

On July 12, 2011, Brooks filed a pro se petition for state post-conviction relief, asserting similar claims as those raised on direct appeal. ECF No. 6-6 at 5. On October 6, 2014, Brooks, through counsel, amended his petition withdrawing the claims he initially raised and asserting two claims based on ineffective assistance of trial counsel. ECF No. 6-7 at 4; ECF No 6-8 at 5. Brooks claimed he received ineffective assistance when trial counsel failed (1) to cross-examine Butler with impeachment evidence of his favorable plea deal and prior convictions, and (2) to object to certain statements made by the State during closing argument. ECF No 6-7 at 4. After holding a hearing on the amended petition, the state court denied Brooks' petition on May 14, 2015. ECF No. 6-9 at 1–3. Brooks filed an application for leave to appeal that decision, which the Court of Special Appeals summarily denied. ECF Nos. 6-10, 6-11.

On February 7, 2017, Brooks filed his federal Petition for a Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254. ECF No. 1. In his petition, Brooks asserts two claims of ineffective assistance of counsel. *Id.* at 5, 7. Respondent filed an Answer, arguing Brooks' petition should be denied based on the merits and procedural default. ECF No. 6.

## DISCUSSION

### I.    Standard of Review

The federal habeas statute at 28 U.S.C § 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The statute sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 853 (2005). This standard is "difficult to meet," and requires federal courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).  A state prisoner must show that a state court ruling on a claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."  *Williams v. Taylor*, 529

U.S. 362, 405 (2000). Under the "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Nicolas v. Attorney Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* (citation omitted).

## II. Analysis

In Brooks' Petition, he raises two claims that he received constitutionally ineffective assistance from his trial counsel. Such claims are grounded in the Sixth Amendment, which

provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Id.* at 687.

To satisfy the first prong of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (citation omitted). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688. The standard for assessing such competence is "highly deferential" and involves a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669.

The second prong requires the court to consider whether counsel's errors were so serious that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 691–94. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The Court need not appraise the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Id.* at 697.

A federal court's consideration of ineffective assistance of counsel claims arising from state

criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (internal marks and citations omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### A. Cross-Examination of Butler

First, Brooks asserts his trial counsel rendered ineffective assistance in failing to cross-examine Butler on the plea deal he received. Brooks initially raised this claim in his state post-conviction petition, arguing that trial counsel should have asked Butler questions regarding the terms of his plea deal. ECF No. 6-7 at 8. Under Butler's agreement, the maximum sentence he could receive was 21 years imprisonment, in contrast to the more than 100 years he could have faced if the State had not dismissed the other charges. *Id.* Brooks argued that his trial counsel's failure to pursue this line of questioning amounted to ineffective assistance, as the favorable plea deal was "powerful impeachment evidence" that could establish a "motive to testify falsely." *Id.* (first quoting *Ware v. State*, 348 Md. 19, 41 (1997); and then quoting *Marshall v. State*, 346 Md. 186, 198 (1997)).

At the hearing on Brooks' state post-conviction petition, the State called Joseph Ruddy as

a witness. ECF No. 6-8 at 12. Ruddy was the prosecutor assigned to Brooks' homicide and carjacking cases. *Id.* at 12–13. Ruddy explained that the carjacking case went to trial before the homicide, and that he specifically instructed Butler to not mention the murder during his testimony in the carjacking case. *Id.* at 20. Ruddy further explained that he had told Brooks' trial counsel, Janet Callis, that he would not attempt to bring in any evidence of the homicide during the carjacking trial. *Id.* at 21. However, had Callis impeached Butler on cross-examination with the cooperation agreement, Ruddy would have "moved to admit evidence that part of his motives for cooperation was to stay away from the homicide that he wasn't involved with and that [he] had only been connected to because Mr. Brooks failed to get rid of the gun." *Id.* at 22. According to Ruddy, he made this clear to Callis, and Callis was "going to do everything she could to keep it out of the trial, because she thought not allowing the jury to hear that the Defendant was connected to a murder and that evidence in the carjacking was connected to that murder was to [Brooks'] benefit." *Id.* at 27. Callis was unable to testify at the post-conviction hearing but had previously said she was unable to remember the details of representing Brooks.

In response to Ruddy's testimony, Brooks' post-conviction counsel argued that, even if cross-examination on the plea deal "opened the door to the jurors learning" of the homicide case, "the [trial court] would not have admitted that evidence because it is so prejudicial." *Id.* at 54. Brooks further contended that Callis should have, at the very least, filed a pre-trial motion to determine whether the State would be permitted to bring up the murder under such circumstances. *Id.* at 56. Thus, Brooks asserted, Callis' failure to file the motion or cross-examine Butler on the plea deal amounted to ineffective assistance.

After the hearing, the state post-conviction court denied Brooks' claim in a written decision. ECF No. 6-9 at 2. The state court first described the relevant standard for ineffective

assistance under *Strickland* and then determined that Callis' failure to cross-examine Butler on his cooperation with the State "was likely a matter of trial tactics." *Id.* Agreeing with the State that "the cross-examination could have opened the door" to evidence of the homicide case "coming out in front of the jurors," the court found that Callis' "actions were within the accepted norms and did not prejudice" Brooks. *Id.*

Respondent now argues that the sate post-conviction court properly applied the *Strickland* standard, and that the decision should be upheld under Section 2254(d). The Court agrees. Rather than risk opening the door to Brooks' pending homicide case, his trial counsel focused her cross-examination of Butler on inconsistencies between his testimony and the testimony of other witnesses. Although it is unclear whether the state court would have ultimately permitted reference to the homicide case, there is a "reasonable argument that counsel satisfied *Strickland's* deferential standard" with this strategy. *Harrington*, 562 U.S. at 105. Under the similarly deferential standard of federal habeas review, the state court's finding of no error on the part of trial counsel was a reasonable application of the law. Accordingly, the Court will deny Brooks' claim on the cross-examination of Butler.

### B. Closing Argument

Brooks next alleges he received ineffective assistance when his trial counsel failed to object to comments made by the State's attorney during closing argument. Specifically, Brooks contends counsel should have objected when the prosecutor referred to Brooks and Butler as "teammates." ECF No. 1 at 14. Brooks was charged with second-degree assault and first-degree assault of Joseph Cherry, the man who attempted to block the stolen vehicle with his minivan on the night of the carjacking. *See* ECF No. 6-4 at 25; ECF No. 6-2 at 65, 74. As Butler testified that he was the one who exited the vehicle and pointed his gun at Cherry, the two assault counts against Brooks were

based on an aiding and abetting theory of liability. *See* ECF No. 6-2 at 9; ECF No. 6-3 at 37–38. In explaining the court's jury instruction on aiding and abetting during closing argument, the prosecutor stated:

> We all have either played on teams, been associated with teams, if you have a family, that's a team. Some of them are more dysfunctional than others, but they're a team. And you win and you lose as a team, and you are responsible when you're on a team for every single thing that your teammates do, because that's what goes into winning or losing. That's what the instruction is saying, that the Defendant was present when the crime was committed and that the Defendant willfully participated.

ECF No. 6-3 at 53–54.

Respondent argues that this claim should be dismissed based on the doctrine of procedural default. While Brooks raised claims related to closing argument on direct appeal and in his state post-conviction petition, he never raised any objection to this "teammates" analogy. On direct appeal, Brooks asserted that the State made an improper "Golden Rule" reference during closing argument, "one in which a litigant asks the jury to place themselves in the shoes of the victim." ECF No. 6-5 at 22. This claim was based on the State asking jurors to "think about how you would feel if this [gun] was pointed in your face." ECF No. 6-3 at 43. In Brooks' post-conviction petition, he argued that he received ineffective assistance when his counsel failed to object to the "Golden Rule" statement, and further that his counsel should have objected to the State's improper "burden shifting" remark that the evidence was "uncontradicted." ECF No. 6-7 at 13–15. Until his federal habeas petition, however, Brooks never mounted any challenge to the State's "teammates" comments. Accordingly, Respondent argues this claim is procedurally defaulted.

The procedural default doctrine can act as a bar to federal review of a petitioner's claim. One manner of procedural default occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to

meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). The exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). In Maryland, this may be accomplished either on direct appeal or in post-conviction proceedings. Brooks did not raise his claim regarding the "teammates" comments at any stage in state court. Moreover, it appears that Brooks is precluded from doing so now, because under Maryland law a petitioner may bring only one petition for post-conviction relief.[1] Md. Code Ann. Crim. Proc., § 7-103(a). Thus, Brooks' closing argument claim is procedurally defaulted.

When default has occurred, a federal court may still address the merits of a state prisoner's habeas claim if the petitioner can show both cause for the default and actual prejudice that would result from failing to consider the claim on the merits. *See Murray v. Carrier*, 477 U.S. 478, 494–95 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (internal marks and citation omitted). To demonstrate prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Even where a petitioner fails to show cause and prejudice for a procedural

---

[1] Under certain circumstances, a state post-conviction court can reopen post-conviction proceedings "if the court determines that the action is in the interests of justice." Md. Code Ann., Crim. Proc. § 7-104. However, Brooks' claim would also be barred by a separate Maryland rule deeming an allegation of error waived "when a petitioner could have made but intelligently and knowingly failed to make the allegation" in a prior post-conviction petition. *Id.* § 7-106(b)(1)(i)(6). The facts underlying this ineffective assistance claim were known to Brooks at the time of his first state post-conviction petition, and he even raised several claims based on his attorney's failure to object to other statements made at closing argument. Thus, although a petitioner may be afforded an opportunity to assert a new claim after an initial post-conviction petition, Brooks would be unable to do so in this case. *See Stokes v. Bishop*, No. RDB-12-840, 2014 WL 1320139, at *3 (D. Md. Mar. 27, 2014).

default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

Brooks asserts he can establish "cause" based on the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court explained that cause could arise "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland*." *Id.* at 14. The petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* Brooks argues that his post-conviction counsel provided ineffective assistance by failing to raise a claim premised on the "teammates" statements made during closing argument.

The Court finds that the failure to assert this claim in Brooks' state post-conviction petition does not establish "cause" under *Martinez*, because the claim lacks merit and is thus "insubstantial." *Id.* at 16. As a threshold matter, it is not at all clear the "teammate" comments made by the prosecutor were improper under Maryland law. "During closing argument, counsel must confine his or her oral advocacy to the issues in the case, but is afforded generally wide latitude to engage in rhetorical flourishes and to invite the jury to draw inferences." *Ingram v. State*, 427 Md. 717, 727 (2012). Although Brooks does not explain his precise objection to the prosecutor's statements, Maryland courts have found that "allowing counsel to expand too far afield upon the trial court's binding jury instructions during closing argument carries with it a . . . danger that the jury may misapply the law." *Id.* at 729. Even if the prosecutor crossed this line by

calling Brooks and Butler "teammates," he immediately stated that "what the [aiding and abetting] instruction is saying" is "that the Defendant was present when the crime was committed and that the Defendant willfully participated." ECF No. 6-3 at 54. This statement is consistent with the trial court's instruction, which read: "In order to prove that the Defendant aided and abetted in the commission of a crime the State must prove that the Defendant was present when the crime was committed; and two, that the Defendant willfully participated with the intent to make the crime succeed." *Id.* at 38.

Moreover, even if the prosecutor's comments were improper under Maryland law, "[c]onstitutionally effective assistance does not require the assertion of every possible valid objection." *Hansford v. Angelone*, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002) (citation omitted); *see also Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989) (Choosing to remain silent "[r]ather than draw further attention to the evidence . . . is a judgment trial attorneys make routinely."). Accordingly, there is a strategic explanation behind trial counsel's failure to object to the prosecutor's statements during closing and, by extension, post-conviction counsel's failure to raise an ineffective assistance claim based on this omission. Under the deferential *Strickland* standard, Brooks' has not put forth a meritorious claim that could provide "cause" for his procedural default of this claim. Brooks has similarly failed to show "prejudice" in this case, where the prosecutor's allegedly improper statements were tied to two assault counts, of which the jury ultimately found Brooks not guilty. ECF No. 6-4 at 25. As Brooks has provided no basis to excuse his default, the Court will dismiss this ineffective assistance claim as procedurally defaulted.

## CERTIFICATE OF APPEALABILITY

When a district court dismisses a habeas petition, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773–74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Brooks fails to satisfy this standard, the Court declines to issue a Certificate of Appealability. Brooks may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Court will DISMISS Brooks' Petition for a Writ of Habeas Corpus and will DECLINE to issue a certificate of appealability. The Court will direct the Clerk to CLOSE the case.

A separate Order follows.


___12/3/2019_____              _____/s/_____
Date                                          RICHARD D. BENNETT
                                              UNITED STATES DISTRICT JUDGE